618 P.2d 886

Municipal Judge Frederick MOWRER, Municipal Judge Elizabeth Love, Plaintiffs–Appellees and Cross–Appellants,

v.

Mayor David RUSK, James C. Jaramillo, The Albuquerque City Council and the City of Albuquerque, Defendants–Appellants and Cross–Appellees.

No. 12841.

Supreme Court of New Mexico.

Oct. 22, 1980.

George R. Bryan, III, City Atty., Lauren E. Marble, Asst. City Atty., Albuquerque, for defendants–appellants and cross–appellees.

Stephen Durkovich, Albuquerque, for plaintiffs–appellees and cross–appellants.

## OPINION

ROBERT M. DOUGHTY, District Judge.

A declaratory judgment action was brought in the District Court of Bernalillo

County by two judges of the Albuquerque Municipal Court. The judges sued the Mayor, Chief Administrative Officer, City Council and the City of Albuquerque, to establish: that the municipal court judges have authority to hire, supervise, compensate and discharge the employees of the municipal court, including the court administrator; that municipal court employees do not fall within the provisions of the city's merit system ordinance; and that municipal court judges have authority to present budget requests to the council without interference from the executive branch.

The Albuquerque City Council amended Section 3–1–13 of the Revised Ordinances of the City of Albuquerque, 1974, relating to the municipal court. Prior to the amendment, Section 3–1–13 provided that (1) all personnel of the municipal court were employed by the mayor and subject to the merit system ordinances as any other city employee; (2) the court administrator was appointed by the mayor on the recommendation of the municipal judges; (3) the court administrator was administratively responsible to the presiding judge, and (4) each municipal judge was entitled to one call clerk, one bailiff and one secretary, to be appointed by the mayor on the recommendation of each municipal judge, and administratively responsible to their respective judges. The amendment made the following changes: (1) it provided that all personnel of the municipal court would be employed by the chief administrative officer, rather than the mayor; (2) appointments would be made by the chief administrative officer rather than the mayor; (3) the court administrator was made administratively responsible to the chief administrative officer rather than the presiding judge, and (4) new language was inserted to make all personnel of the municipal court administratively responsible to the chief administrative officer. Provisions relating to the call clerk, bailiff and secretary assigned each judge were left unchanged (except that the chief administrative officer rather than the mayor made the appointments).

The amendment to Section 3–1–13 became effective on April 18, 1979. On that day, the judges filed their complaint, requesting a temporary restraining order to prevent the City from enforcing Section 3–1–13, as amended, and further requesting a declaratory judgment invalidating that section.

On June 21, 1979, the judges filed their first amended complaint. They broadened their claim to challenge the provisions of the city's merit system ordinance which provided for the employment and supervision of all city employees by the chief administrative officer, and the administrative procedure by which money was budgeted to the courts.

These issues came on before the trial court upon the plaintiffs' oral motion for summary judgment. The trial judge entered summary judgment, and ruled: (1) the issues presented in this case were not moot; (2) based upon N.M.Const. Art. III and Art. VI, and the inherent powers of the court, the judges had the power to hire, supervise, and discharge the unclassified employees of the municipal court, i. e., the court administrator, the judges' secretaries, the bailiffs and all the call clerks, subject to classification procedures of the merit system ordinance, and (3) the court should not overturn the provisions of the city ordinance and the city charter requiring prior approval of the municipal court budget by the executive branch prior to submission to the city council nor any other provision of the charter or municipal ordinances regarding the budgetary process.

We affirm in part and reverse in part. We hold that the legislative enactment, creating the metropolitan court, did not moot the issues presented in this case. We hold that Section 3–1–13, as amended, is unconstitutional as violative of Article III of the Constitution of New Mexico. We hold that the trial court erred in ruling that the discharge of municipal court employees is subject to the merit ordinance of the City of Albuquerque. We also hold that any municipal ordinance or any portion of any municipal charter, or indeed any statute, which requires that the judiciary first submit its

requested budget to the major or any part of the executive branch of government prior to submitting the same to the legislative branch of government is unconstitutional as violative of Article III of the Constitution of New Mexico.

## MOOTNESS

The Albuquerque City Council amended Section 3–1–13 of the Revised Ordinances of the City of Albuquerque, 1974, effective April 18, 1979. This action was filed on that date.

1979 N.M.Laws, Ch. 346 [Section 34–8A–1 to 34–8A–9, N.M.S.A.1978 (1980 Cum. Supp.)] was passed by the first session of the 34th Legislature, and was signed by the governor on April 5, 1979. The statute abolished the Municipal Court of the City of Albuquerque and created a State Metropolitan Court effective July 1, 1980. We assume, for the purpose of analysis, that Section 34–8A–1 gave metropolitan judges authority over the personnel and budgetary process sought in the trial court.

Arguing that legislation which resolves a controversy renders a case moot, the defendants–appellants seek the dismissal of this matter for lack of an actual controversy. The trial court held that the case was not moot, concluding that the statute could be repealed and that questions concerning the constitutionality of the municipal ordinances required the court to address the matters raised.

Section 44–6–2, N.M.S.A.1978 authorized the district courts to render declaratory judgments in "cases of actual controversy." We must determine whether an actual controversy existed at the time this action was filed, whether the matter has been mooted by the legislative enactment, and whether the courts can and should hear this matter irrespective of the creation of the Metropolitan Court.

We have held that in order to confer jurisdiction on the court to enter a declaratory judgment, an actual controversy must exist. *Allstate Insurance Co. v. Firemen's Insurance Co.*, 76 N.M. 430, 415 P.2d 553 (1966); *Taos County Board of Education v.*

*Sedillo*, 44 N.M. 300, 101 P.2d 1027 (1940). However, as stated in *Taos County Board of Education* :

There has been great diversity of opinion, however, over the question of just what is an "actual controversy" for the purposes of jurisdiction under the act. *Id.* at 308–09, 101 P.2d at 1033.

■ We set forth what constitutes an "actual controversy" in a declaratory judgment action in *Sanchez v. City of Santa Fe*, 82 N.M. 322, 481 P.2d 401 (1971). We hold that the facts in the instant case satisfy the requirement set forth in *Sanchez*. That leaves for consideration the effect of 1979 N.M.Laws, Ch. 346 on the issues herein.

■ One of the underlying precepts of the doctrine of mootness is a limitation upon jurisdiction or decrees in cases where no actual controversy exists. As a general rule, an action will be dismissed if the issues therein are or have become moot. There are, however, certain well defined exceptions to that general rule. These exceptions involve issues of "substantial public interest," and issues "capable of repetition, yet evading review." Indeed, from this Court's opinion in *Taos County Board of Education, supra*, it is apparent that exceptions to a hard and fast rule exist when interpreting the term "actual controversy." As stated in *People v. Labrenz*, 411 Ill. 618, 104 N.E.2d 769 (1952), *cert. denied*, 344 U.S. 824, 73 S.Ct. 24, 97 L.Ed. 642 (1952):

But when the issue presented is of substantial public interest, a well–recognized exception exists to the general rule that a case which has become moot will be dismissed upon appeal. See cases collected in 132 A.L.R. 1185. Among the criteria considered in determining the existence of the requisite degree of public interest are the public or private nature of the question presented, the desirability of an authoritative determination for future guidance of public officers, and the likelihood of future recurrence of the question. 104 N.E.2d at 772.

A court should continue a cause, notwithstanding a lapse of time or the particular

degree of controversy, if the court discerns a likelihood of recurrence of the same issue, generally in the framework of a "recurring" controversy and "public interest" in maintaining the appeal. The seminal opinion of this doctrine is *So. Pac. Terminal Co. v. Int. Comm. Comm.*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). *See also Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Cedar Coal Co. v. United Mine Wkrs. of America*, 560 F.2d 1153 (4th Cir. 1977), *cert. denied*, 434 U.S. 1047, 98 S.Ct. 893, 54 L.Ed.2d 798 (1978); *Alton & So. Ry. Co. v. International Ass'n of Mach. & A. W.*, 463 F.2d 872 (D.C.Cir.1972).

■ Assuming that the creation of the metropolitan court places in its judges the authority over court personnel and the budgetary process, does this case present such a requisite degree of public policy to place it within the mootness exceptions? We hold that it does. The constitutional doctrine of separation of powers is at the very heart of the controversy raised in this case. The inherent and constitutional authority of the judiciary is challenged by the issues. The parameters of the separation of powers doctrine presents a recurring problem of great public interest.

## SEPARATION OF POWERS

Before we reach an analysis of the constitutionality of the Albuquerque Municipal Ordinance, we address the issue of whether Article III, Section 1[1] of the New Mexico Constitution applies to municipal courts. Appellants contend that Article III, Section 1 provides for separation of powers between the departments of state government only, relying on *State ex rel. Chapman v. Truder*, 35 N.M. 49, 289 P. 594 (1930).

In *Truder*, this Court was called upon to determine whether the office of mayor became vacant by virtue of the mayor's election to the office of the district attorney

pursuant to a statute then providing that an office of the class of mayor becomes vacant by the incumbent accepting and undertaking to discharge the duties of another incompatible office. The Court held that the office of mayor and district attorney were not incompatible. In addition, the Court held that Article III applied to state offices only and not to municipal offices. We now reassess the issue of whether Article III applies to municipal offices.

Appellants' argument ignores the common source of all judicial power within the State of New Mexico. *See State v. Mechem*, 63 N.M. 250, 316 P.2d 1069 (1957). N.M.Const. Art. VI, Section 1 provides as follows:

The judicial power of the state shall be vested in the senate when sitting as a court of impeachment, a supreme court, a court of appeals, district courts, probate courts, magistrate courts and such other courts inferior to the district courts as may be established by law from time to time in any district, county or municipality of the state.

This section takes the very power granted the judiciary in Article III and vests its entirety in the courts specifically mentioned in Article VI and those courts constitutionally created by the Legislature. As it relates to the authority of the judiciary, Article III of the New Mexico Constitution bars any infringement upon the power and the authority of the judiciary by the executive and legislative branches of the government at any level of state or local government.

■ N.M.Const. Art. VI, Section 3 vests superintending control in the Supreme Court over all inferior courts. In addition, Section 13 vests in the district courts supervisory control over all cases originating in courts or tribunals inferior to the district courts. Any action of the executive or legislative branch of the municipal govern-

---

1. N.M.Const. Art. III, Section 1 provides as follows:

The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with

the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

ment which would preclude the Supreme Court or the district court from exercising its superintending or supervisory authority over the municipal court violates Article III and Article VI, Sections 3 and 13 of the New Mexico Constitution.

█ Appellants argue that the Albuquerque Municipal Court, created by the Legislature in Section 35–14–1, N.M.S.A.1978 (1980 Cum.Supp.), made no express provision for municipal court judges to appoint, employ, or supervise municipal employees, or to engage in budgetary functions. They further argue that the Legislature provided for the exercise of such powers by the executive in the mayor–council form of government in Section 3–11–6, N.M.S.A.1978. It is also contended that the Legislature provided in Section 3–13–4(A), N.M.S.A.1978, that any municipality may establish by ordinance a merit system governing the hiring, promotion, discharge and general regulation of municipal employees. We hold that any such statutory scheme under which the executive and legislative branches of a municipal government can control or exercise the inherent powers of the judiciary would be violative of Article III and Article VI, Section 1 of the New Mexico Constitution.

We find that the ruling of this Court in *State ex rel. Chapman v. Truder, supra,* is distinguishable from the case at bar, in light of the interrelationship between Article III and Article VI, Section 1 of the Constitution.

The remaining issue herein is whether the power of the judiciary, constitutional or inherent, extends to the areas controlled by the executive branch of the Albuquerque municipal government pursuant to Chapter 3, Article I and Chapter 2, Article IX of the Revised Ordinances of the City of Albuquerque, 1974. If the judicial power extends thereto, the ordinances are unconstitutional.

### INHERENT POWERS

█ N.M.Const. Art. III, Section 1 provides that the powers of the government of this State are divided into three distinct departments, the legislative, executive and judicial. No person or collection of persons charged with the exercise of powers properly belonging to one of these departments may exercise any powers properly belonging to another. It is a basic precept of our constitutional form of republican government that the judiciary is an independent and co–equal branch of government. This constitutional concept, originally founded under our United States Constitution, was most recently reaffirmed in *Nixon v. Administrator of General Services,* 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977).

At issue herein is the line of separation or demarcation between the judicial and executive branches of government and their respective jurisdictions and powers. This line of demarcation or separation is difficult to definitely and specifically define. However, we must, of necessity, examine and define some of the respective powers within these undefined boundaries to reach a decision in this case. *See Commonwealth ex rel. Carroll v. Tate,* 442 Pa. 45, 274 A.2d 193 (1971), *cert. denied* 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971).

█ The constitutional doctrine of separation of powers allows some overlap in the exercise of governmental function. The City of Albuquerque and its mayor argue that the doctrine only means that there are certain powers so inherently legislative or judicial in character that they must be exercised exclusively by their respective departments. They argue that the power to supervise employees or to engage in the budgetary process is not so exclusively judicial in character that it must be exercised solely by the municipal court judges. While there is authority approving the doctrine of overlapping, we find appellants' analysis too shallow.

The authorities of other jurisdictions on the separation of powers and problems arising from a deprivation of the authority of the judicial are legion. In the landmark case of *Commonwealth ex rel. Carroll v. Tate, supra,* the Supreme Court of Pennsylvania noted the issues we address:

Because of the basic functions and inherent powers of the three co—equal Branches of Government, the co—equal independent Judiciary must possess rights and powers co—equal with its functions and duties, including the right and power to protect itself against any impairment thereof. (Citations omitted.)

274 A.2d at 197.

The Supreme Court of Arizona, in *Mann v. County of Maricopa*, 104 Ariz. 561, 456 P.2d 931 (1969), has also addressed the issue:

Courts of general jurisdiction have "the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. The right to appoint a necessary staff of personnel necessarily carries with it the right to have such appointees paid a salary commensurate with their responsibilities. The right cannot be made amenable to and/or denied by a county council or the legislature itself. Our Courts are the bulwark, the final authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. The arm which holds the scales of justice cannot be shackled or made impotent by either restraint, circumvention or denial by another branch of that government." *Noble County Council v. State of Indiana ex rel. Fifer* (1955), 234 Ind. 172, 125 N.E.2d 709.

456 P.2d at 933.

The Supreme Court of Colorado in *Smith v. Miller*, 153 Colo. 35, 384 P.2d 738 (1963), adopting the language of a trial court, concisely set the parameters of the line of demarcation between the various branches of government as follows:

It is an ingrained principle in our government that the three departments of government are coordinate and shall co—operate with and complement, and at the same time act as checks and balances against one another but shall not interfere with or encroach on the authority or within the province of the other. The legislative and executive departments have their functions and their exclusive powers, including the 'purse' and the 'sword.' The judiciary has its exclusive powers and functions, to—wit: it has judgment and the power to enforce its judgments and orders. In their responsibilities and duties, the courts must have complete independence. It is not only exiomatic [sic], it is the genius of our government that the courts must be independent, unfettered, and free from directives, influence, or interference from any extraneous source. It is abhorrent to the principles of our legal system and to our form of government that courts being a coordinate department of government, should be compelled to depend upon the vagaries of an extrinsic will. Such would interfere with the operation of the courts, impinge upon their power and thwart the effective administration of justice. These principles, concepts, and doctrines are so thoroughly embedded in our legal system that they have become bone and sinew of our state and national polity.

. . . . .

... [T]he courts have the inherent power to carry on their functions so that they may operate independently and not become dependent upon or a supplicant of either of the other departments of government, and may incur necessary and reasonable expenses in the performance of their judicial duties. . . .

384 P.2d at 741.

██ With respect to Section 3–1–13 of the Revised Ordinances of the City of Albuquerque, 1974, the record reflects that the ordinance, as amended, places broad discretion, authority and power in the executive relating to the hiring, supervising and discharging of personnel working for the municipal court and relating to certain administrative functions of the court. Under that ordinance, the municipal judges are given no voice in the hiring of the court administrator. Instead, the court administrator is hired by the chief administrative officer, a member of the executive branch of government. The court administrator is not subject to the supervision of the municipal

judges. Similarly, the power to hire and supervise all employees in the municipal court is vested not in the municipal judges, but in the court administrator. The power to discharge all but the judge's secretary, his bailiff, and his call clerk, rests with the court administrator. In addition, the following functions were made the ultimate responsibility of the court administrator and not the judge's: receiving and distributing the court mail, processing court transactions, maintaining court records, preparation and maintenance of the court docket, setting dates for attorney represented cases, setting dates for all continuances, preparation of bench warrants, collection and accounting of all money received, preparing for daily, monthly and annual cash reports, preparing the budget for the operation and maintenance of the court, approval of requisitions for the purchase of necessary materials on funds appropriated for the court, and approval of all claims for the expenditures of funds. All of these functions under the amended ordinance are to be performed by employees who are not subject to the supervision of the municipal judges, but instead are subject to the supervision of the court administrator. In actual practice, the basic changes in the ordinance provided that a judge cannot employ a secretary, bailiff or clerk if the court administrator does not approve. If a judge thinks that he is being scheduled too heavily, and the court administrator does not agree, then the court clerk is to obey the court administrator in regard to scheduling the judge's cases.

The power to control the personnel in functions of the court to the extent authorized by the ordinance, as amended, is the power to coerce the judiciary into compliance with the wishes or whims of the executive. As stated by Chief Justice Burger in his dissent in *Nixon v. Administrator of General Services, supra*:

> A unanimous Court, including Mr. Chief Justice Taft, Mr. Justice Holmes, and Mr. Justice Brandeis stated:
>
> "The general rule is that neither department [of government] may ... control, direct or restrain the action of

the other." *Massachusetts v. Mellon*, 262 U.S. 447, 488 [43 S.Ct. 597, 601, 67 L.Ed. 1078] (1923).

Similarly, in *O'Donoghue v. United States*, 289 U.S. 516, 530 [53 S.Ct. 740, 743, 77 L.Ed. 1356 (1933), the Court emphasized the need for each branch of Government to be free from the coercive influence of the other branches:

> "[E]ach department should be kept completely independent of the others—independent not in the sense that they shall not cooperate to the common end of carrying into effect the purposes of the Constitution, but in the sense that the acts of each shall never be controlled by, or subjected, *directly or indirectly*, to, the coercive influence of either of the other departments."

In *Humphrey's Executor v. United States*, 295 U.S. 602, 629–630 [55 S.Ct. 869, 874, 79 L.Ed. 1611] (1935), the Court again held:

> "The fundamental necessity of maintaining each of the three general departments of government entirely free from the control or coercive influence, *direct or indirect*, of either of the others, has often been stressed and is hardly open to serious question. So much is implied in the very fact of the separation of the powers...." (Emphasis supplied.)

For authority for the proposition that the judiciary must, as a matter of constitutional law, directly control court personnel, *see Holohan v. Mahoney*, 106 Ariz. 595, 480 P.2d 351 (1971); *Roylston v. Pima County*, 106 Ariz. 249, 475 P.2d 233 (1970); *Mann v. County of Maricopa, supra; State ex rel. Weinstein v. St. Louis County*, 451 S.W.2d 99 (Mo.1970); *Norman v. Van Elsberg*, 262 Or. 286, 497 P.2d 204 (1972).

▪ Personnel directly employed by the courts cannot constitutionally be included in a general merit system or ordinance. The case of *Massie v. Brown*, 9 Wash.App. 601, 513 P.2d 1039 (1973), involved an appeal from a judgment of the Superior Court of Washington permanently enjoining the City

**56**

of Seattle and its civil service commission from extending civil service status to the position to warrant service within the Seattle Traffic Violations Bureau. The Court held:

> The placement in the commission of control of the incidence of employment of personnel directly connected with the operation of the municipal court is improper as an invasion of the independence of the judiciary. The doctrine of separation of powers applies.

513 P.2d at 1040.

It should be noted that it was argued in that cause, as in this one, that the city charter required the inclusion of the warrant servers in the civil service system. The Washington Court of Appeals rejected this argument, noting that the Seattle Municipal Court was not established by the charter, but by state legislation. The same is true in New Mexico. In addition, *see Holohan v. Mahoney, supra,* wherein the Supreme Court of Arizona held that a youth supervisor at a detention home, an employee of the judiciary, could not be included within the county employees' merit system, and was not entitled to that system's protection providing for termination only through a merit system commission.

■ Authority for our ruling that any requirement that the executive branch of government cannot first pass upon the judiciary's budget, as a condition precedent to its submission to the legislative branch of government, is overwhelming. *See Carlson v. State of Indiana ex rel. Stodola,* 247 Ind. 631, 220 N.E.2d 532 (1966); *Commonwealth ex rel. Carroll v. Tate, supra;* Annot., 59 A.L.R.3d 569 (1974); Brennan, *Judicial Fiscal Independence,* 23 U.Fla.L.Rev. 277 (1971); Comment, *State Court Assertion of Power to Determine and Demand Its Own Budget,* 120 U.Pa.L.Rev. 1187 (1972); Note, *Judicial Financial Autonomy and Inherent Power,* 57 Cornell L.Rev. 975 (1972). The inherent power of a constitutional court to sustain its own independent existence has always been assumed but never before set forth in New Mexico case law. Any requirement that the judicial branch first submit its budget request to the executive branch dilutes and could render impotent the inherent power of the judiciary.

IT IS SO ORDERED.

SOSA, C. J., and EASLEY, PAYNE and FEDERICI, JJ., concur.