The Honorable Richard MAYS, Judge, et al., Relators,

v.

The FIFTH COURT OF APPEALS, Respondent.

No. C–7342.

Supreme Court of Texas.

June 22, 1988.

Rehearing Denied Sept. 14, 1988.

Kerry W. Young, Dallas County Criminal Dist. Courts, Dallas, for relators.

Earl Luna and Mary Milford, Law Offices of Earl Luna, Dallas, for respondent.

OPINION

RAY, Justice.

This case, involving a salary increase for court reporters, is governed by TEX. GOV'T CODE ANN. § 52.051 (Vernon 1988). Some of the District Judges of Dallas County ordered a 5% salary increase for their court reporters pursuant to that statutory authority. However, the Dallas County Commissioners Court passed an order instituting only a 3% pay increase for the court reporters, but ordered an additional 2% increase to be paid effective October 1, 1987, if a court should determine

that § 52.051 is constitutional. The Commissioners Court then filed in the district court a petition for declaratory judgment asserting that § 52.051 unconstitutionally circumscribes the authority of the Commissioners Court to set the tax rate for the county. *See* TEX.CONST. art. VIII, §§ 1–A, 9.

When the Commissioners Court refused to fund the 5% raise, the Judges ordered them to direct the County Treasurer to issue payroll checks to the court reporters reflecting the 5% salary increase. ("The October orders"). The Commissioners Court did not comply and the Judges issued show cause orders. The Commissioners Court then filed for mandamus relief with the Dallas Court of Appeals which found that: (1) the orders actually direct action and, therefore, were essentially writs of mandamus orders made without notice and hearing to the Commissioners Court; (2) the Judges contravened TEX.R.CIV.P. 694 because a mandamus cannot issue ex parte; (3) the Commissioners Court was entitled to notice and a hearing on the October orders; and (4) it appeared at oral argument that the Judges would not vacate the orders on motion as required by TEX.R.CIV.P. 694. Accordingly, the court of appeals ordered the Judges to vacate their October orders. 747 S.W.2d 842, 847 (1988).

This case is controlled by TEX.GOV'T CODE ANN. § 52.051 (Vernon 1988) which provides:

> (a) An official district court reporter shall be paid a salary set by the order of the judge of the court. This salary is in addition to transcript fees, fees for a statement of facts, and other necessary expenses authorized by law.
>
> .    .    .    .    .
>
> (c) An order increasing the salary of an official district court reporter must be submitted to the commissioners court of each county in the judicial district not later than September 1 immediately before the adoption of the county budget for the next year. A commissioners court may allow an extension of this time limit.

The District Judges complied with § 52.051(a) and (c) in that they ordered a 5% pay raise within the time period prescribed by the statute.

■■■ We hold that the pay increase, which was less than the 10% increase authorized by § 52.051(d), was a ministerial act to be performed by the Commissioners Court and an act in which the Legislature left no discretion. The Commissioners Court acted in violation of the statute in not setting the salaries prescribed by the District Judges pursuant to § 52.051. The court of appeals erred in granting mandamus relief in favor of the Commissioners Court against the District Judges since the granting of the pay raise was a nondiscretionary ministerial act. *See Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 109 (Tex.1981). The performance of a clear statutory duty which is ministerial and nondiscretionary may be directed by the District Court without notice and hearing in the absence of a statutory requirement to the contrary. Section 52.-051 does not require the District Judges to provide notice and hearing.

■■ The Texas Constitution has invested the Legislature with the authority to provide for and compensate the district court reporters. TEX.CONST. art. III, § 44. The Legislature has in turn delegated to the District Judges the responsibility for setting the salaries of the district court reporters paid from county funds. TEX. GOV'T CODE ANN. § 52.051 (Vernon 1988). By virtue of its express constitutional and statutory authority, the District Judges' actions have a presumption of validity and are subject to being abrogated by the Commissioners Court only upon proof that the judiciary's actions are extravagant, arbitrary, or unwarranted. *See District Judges of the 188th Judicial District v. County Judge and Commissioners Court for Gregg County*, 657 S.W.2d 908, 910 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.). We are confident that the court of appeals will vacate its order issuing writ of mandamus. We note that the Commissioners Court has filed a petition for declaratory judgment that § 52.051 is unconstitu-

tional. The issues in that lawsuit are not before us and we express no opinion regarding the statute's constitutionality.

SPEARS, J., concurs and WALLACE, ROBERTSON, KILGARLIN and MAUZY, JJ., join.

SPEARS, Justice, concurring.

I concur in the court's opinion authored by Justice Ray. I would go further and hold that, even in the absence of a statutory provision, a court has the inherent power to compel the expenditure of those public funds which are reasonably necessary for the court to efficiently fulfill its constitutional function. *Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 109–110 (Tex.1981); *see also Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398–399 (Tex.1979). On this basis alone, a district judge may set a reasonable salary for a court reporter.

Like the power to punish for contempt, a court's inherent power to compel funding flows from the law of self-preservation. No legislative authority, state or local, can so tighten the purse strings of the judiciary's budget that it fails to provide the funds reasonably necessary for the court's efficient and effective operation. To adhere to any contrary view would effectively concede to the legislature the power to render inoperative the judicial branch of government. It could force the judiciary into the role of a subordinate and supplicant governmental service—in effect, a mere agency.[1] The judiciary is not an agency, but is a constitutionally established separate, equal and independent branch of government. *See LeCroy v. Hanlon*, 713 S.W.2d 335 (Tex.1986).

The courts of Texas derive their judicial power directly from the constitution. Tex. Const. art. V, § 1. This inherent power of the courts to preserve their efficient functioning thus derives from the very creation of the judiciary as a separate branch of government. Indeed, the Texas Constitution not only mandates that the courts shall exercise the judicial power of the state but also *expressly* mandates a separation of governmental powers into three distinct branches.[2] Tex. Const. art. II, § 1. The purpose behind the separation of governmental powers was to avoid the concentration of political power in the hands of a few—i.e. to avoid tyranny. *See* 1 Braden, *The Constitution of the State of Texas: An Annotated and Comparative Analysis* 89 (1977), *citing The Federalist* No. 47 (J. Madison).

Thus, this inherent power of the courts is necessary not only to preserve the judicial branch of government, but also to preserve for the people *their* security and freedom. The judicial power provides a check on the abuse of authority by other governmental branches. If the courts are to provide that check, they cannot be subservient to the other branches of government but must ferociously shield their ability to judge independently and fairly. This is the essence of our very existence; we owe the people of Texas no less than our unflinching insistence on a true tripartite government. It is the responsibility of this court to preserve this constitutional framework.

The inherent power of the courts to compel funding thus arises out of principles and doctrines that are so thoroughly embedded as to form the very foundation of our governmental structure. The judiciary may often be denominated as the "third" branch of government, but that does not

1. The Pennsylvania Supreme Court has explained the problem as follows:

   Unless the legislature can be compelled by the courts to provide the money which is reasonably necessary for the proper functioning and administration of the courts, our entire judicial system could be extirpated, and the legislature could make a mockery of our form of government with its three co-equal branches —the executive, the legislative and the judicial.

   *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193, 199, *cert. denied*, 402 U.S. 974, 91 S.Ct. 1665, 29 L.Ed.2d 138 (1971).

2. In this sense, the Texas Constitution differs from the U.S. Constitution, which by its structure, merely implies a separation of powers. Yet, even without an express constitutional provision, the separation of powers doctrine is nevertheless an unquestioned fundamental of the federal system also.

mean it is third in importance; it is in reality one of three equal branches.[3] As such, the judiciary is an integral part of our government and cannot be impeded in its function by legislative intransigence in funding.

The proposition that courts possess the inherent power to compel the expenditure of public funds for their own operation is not a recent innovation. Nationwide, courts have used their inherent powers to compel funding for a wide variety of essentials. As far back as 1874, the Wisconsin Supreme Court declared that its janitor was a skilled, confidential employee and held:

> It is a power inherent in every court of record, and especially courts of last resort, to appoint such assistants; and the court itself is to judge of the necessity.

*In re Janitor of Supreme Court,* 35 Wis. 410, 419 (1874). In 1902, the Nevada Supreme Court requested chairs and carpet from the Board of Commissioners which, by statute, controlled the expenditure of all appropriations for furnishing, maintaining and repairing the capitol buildings and grounds. When the Board refused the request, the court itself made the purchase and then ordered the Board to pay the bill. The court stated:

> If this Board has the absolute control, as claimed, then, by refusing to furnish the courtroom with a stove or other means of heating, could it obstruct the court in its jurisdiction during a greater part of each year. By refusing tables it could prevent the court making records required by law. To assume that the legislature did confer any such absolute power upon the Board is to assume that the legislature possesses unlimited power of legislation in that matter,—that it could by hostile legislation destroy the judicial department of the government of this state.

*State ex rel. Kitzmeyer v. Davis,* 26 Nev. 373, 68 P. 689, 690–691 (1902).

More recently, a relatively minor expenditure led the Massachusetts Supreme Judicial Court to an emphatic assertion of its inherent powers. When there was no stenographer available, a lower court judge secured the parties' consent to use a tape recorder as a substitute. No tape recorder was available at the courthouse; so an $80.00 tape recorder and $6.00 worth of tapes were immediately purchased from a local store. Stating that it was "a necessary expense" of the court, the judge forwarded the invoice to the county treasurer. The county treasurer refused to pay the bill; he contended that, outside of specific statutory provisions, the court had no authority to bind the county for the purchase of goods or services and that there was no specific appropriation in the county budget for a tape recorder. However, when the case was presented to the Massachusetts Supreme Judicial Court, that court rejected the county treasurer's contentions and held:

> [A]mong the inherent powers possessed by every judge is the power to protect his court from impairment resulting from inadequate facilities or a lack of supplies or supporting personnel. To correct such an impairment, a judge may, even in the absence of a clearly applicable statute, obtain the required goods or services by appropriate means, including arranging himself for their purchase and ordering the responsible executive official to make payment. It is not essential that there have been a prior appropriation to cover the expenditure. Where an obligation is thus legally incurred, it is the duty of the state, or one of its political subdivisions, to make payment.

*O'Coin's Inc. v. Treasurer of County of Worcester,* 362 Mass. 507, 287 N.E.2d 608, 612 (1972).

The Indiana courts have used their inherent powers to order the installation of a more modern and efficient telephone service. *State v. Superior Court of Marion County, Rm. No. 1,* 264 Ind. 313, 344 N.E. 2d 61 (1976). The expenditure of funds for

---

**3.** The traditional denomination of the judiciary as the "third" branch undoubtedly derives from the fact that, in the U.S. Constitution, the judiciary is established under Article III while the legislative and executive branches are established under articles I and II respectively.

air conditioning was compelled by the Wisconsin Supreme Court. *State ex rel. Reynolds v. County Court of Kenosha County,* 11 Wis.2d 560, 105 N.W.2d 876 (1960).

Numerous courts have held that the hiring of court personnel and the designation of staff salaries are matters over which courts may properly exercise their inherent powers. *Mowrer v. Rusk,* 95 N.M. 48, 618 P.2d 886 (1980); *In the Matter of Court Reorganization Plan of Hudson County,* 161 N.J.Super. 483, 391 A.2d 1255 (1978), *aff'd* 78 N.J. 498, 396 A.2d 1144, *cert. denied sub nom. Clark v. O'Brien,* 442 U.S. 930, 99 S.Ct. 2861, 61 L.Ed.2d 298 (1979); *McAfee v. State ex rel. Stodola,* 258 Ind. 677, 284 N.E.2d 778 (1972); *State ex rel. Schneider v. Cunningham,* 39 Mont. 165, 101 P. 962 (1909); *Smith v. Miller,* 153 Colo. 35, 384 P.2d 738 (1963) (en banc). In *Noble County Council v. State ex rel. Fifer,* 234 Ind. 172, 125 N.E.2d 709 (1955), the Supreme Court of Indiana expressly recognized that this power of the courts to employ necessary personnel and fix their salaries was grounded on the most fundamental of constitutional principles and was also mandated by the open courts provision of the Indiana constitution. The court explained:

> These mandates necessarily carry with them the right to quarters appropriate to the office and personnel adequate to perform the functions thereof. The right to appoint a necessary staff of personnel necessarily carries with it the right to have such appointees paid a salary commensurate with their responsibilities. The right cannot be made amenable to and/or denied by a county council or the legislature itself. Our courts are the bulwark, the final authority which guarantees to every individual his right to breathe free, to prosper and be secure within the framework of a constitutional government. The arm which holds the scales of justice cannot be shackled or made impotent by either restraint, circumvention or denial by another branch of that government.

*Id.,* 125 N.E.2d at 714. Some courts have expressly concluded that, as a matter of constitutional law, the judiciary must *directly* control court personnel. *Mowrer v. Rusk,* 95 N.M. 48, 618 P.2d 886 (1980); *Holohan v. Mahoney,* 106 Ariz. 595, 480 P.2d 351 (1971) (en banc); *Massie v. Brown,* 9 Wash.App. 601, 513 P.2d 1039 (1973), *aff'd,* 84 Wash.2d 490, 527 P.2d 476 (1974) (en banc). On this basis, these courts have held that court employees are not entitled to the protections of a general civil service system.

Finally, courts may even compel payment of those expenses which are reasonably necessary for the court to exercise its inherent powers. Thus, if it becomes necessary for a court to retain counsel in order to litigate an exercise of inherent powers, then payment of attorney fees may also be compelled. *Young v. Board of County Commissioners,* 91 Nev. 52, 530 P.2d 1203 (1975).

These cases demonstrate the widespread acceptance of the doctrine of courts' inherent powers. Indeed, in 1965, a statement of principles asserting the need for financial independence of the courts was adopted by the Conference of Chief Justices, by the National Conference of Court Administrators, and by most of the countries of North and South America at the First Judicial Conference of the Americas. *Statement of Principles: The Need for Independence in Judicial Administration,* 50 Judicature 129 (1966); *Judicial Independence is Keynote of Judicial Conference of the Americas,* 49 J.Am.Jud. Soc'y 44 (1965).

The process of allocating public resources is complex. Both state and local legislative bodies make difficult decisions when faced with competing priorities. Political and economic considerations often result in the relatively unassertive requests of the judiciary being neglected. However, unlike state agencies, courts cannot reduce services. The judiciary can only delay or postpone the disposition of justice. Legislative leaders must realize that courts have been neglected for too long and must now receive greater financial support. In this day and time, with ever increasing dockets, modern word-processing equipment, computers, and skilled personnel to assist with

the workload may often be as critical as heating stoves. The judiciary can no longer permit its efficiency and progress to be stymied by legislators who apparently misunderstand the constitutional role and function of the judiciary as a separate, independent and equal branch of government. Ultimately, the legislative branch of government cannot be permitted to cripple the judicial branch by refusing needed appropriations. The "power of the purse" is a legislative power but it is not an absolute power; it may not be used to divest the court of its ability to function independently and effectively.

Although the judiciary retains the inherent power to compel necessary funding, a spirit of mutual cooperation is unquestionably the people's best guarantee of a constitutional government. Rather than being a source of contention, the judiciary's insistence on its own inherent powers can open an avenue for greater cooperation among the branches of government. Only by recognizing each other as equals can we effectively communicate.

The judiciary's power to compel funding is not dependent on legislative authority. However, in this particular instance, the district judges did act pursuant to an express statutory mandate in setting the court reporters' salaries. Tex.Gov't Code Ann. § 52.051 (Vernon 1988). They acted entirely within the scope of that statute, and the statute does not require that the county commissioners court be provided with notice and hearing. The absence of provision for notice and hearing may be questionable, but the statute's constitutionality is not an issue which we are now called upon to decide.

WALLACE, ROBERTSON, KILGARLIN and MAUZY, JJ., join in this concurring opinion.