1998-NMSC-006

954 P.2d 72

**CITY OF LAS CRUCES, a Municipal Corporation, Plaintiff,**

v.

**EL PASO ELECTRIC COMPANY, a Texas Corporation, Defendant,**

and

**Dona Ana County Board of Commissioners, Intervenor–Defendant.**

No. 23846.

*Supreme Court of New Mexico.*

Feb. 11, 1998.

See also, 904 F.Supp. 1238.

Nann M. Houliston, Albuquerque, Martin, Lutz & Brower, P.C., William L. Lutz, Hugh T. Brower, Las Cruces, for Plaintiff.

Law Office of T.A. Sandenaw, Jr., Thomas A. Sandenaw, Jr., Raul A. Carrillo, Jr., Las Cruces, Sidley & Austin, David F. Graham, D. Cameron Findlay, Mark B. Blocker, James W. Ducayet, Chicago, IL, Cohen & Cohen, Jane C. Cohen, David S. Cohen, Jill Z. Cooper, Santa Fe, for Defendant.

Kevin D. Elkins, Thomas R. Figart, Las Cruces, for Intervenor–Defendant.

Patrick Ortiz, Albuquerque, for Amicus Public Service Company of New Mexico.

## OPINION

MINZNER, Justice.

{1}  The United States District Court for the District of New Mexico, pursuant to Rule 12–607 NMRA 1997, has certified to us this question: "Under New Mexico law, does the City of Las Cruces possess the authority to condemn a portion of El Paso Electric Company's property for use as a municipal electric utility, when that property is already devoted to a public use?"  Following oral argument before this Court but prior to any disposition, the New Mexico Legislature, during the 1997 legislative session, amended NMSA 1978, § 3–24–1 (as amended 1997), to provide express authority to certain municipalities to condemn privately-owned electric utilities for use as a municipal utility.  Following the enactment, we requested supplemental briefing on the issue whether the new amendments made the certified question moot.  We now quash our previous order accepting certification, and decline to accept certification on the ground that, as a result of the 1997 amendment to Section 3–24–1, the issue the federal court certified is moot.

## I.

{2}  The City of Las Cruces (the City) seeks to condemn property belonging to El Paso Electric Company (EPEC).  EPEC has provided the City with electric service for over fifty years.  EPEC also provides service to other counties, creating an integrated utility system.  The City intends to take over EPEC's operations within the City's limits; however, EPEC would continue to serve the other counties which it currently serves.

{3}  In 1994, the citizens of Las Cruces approved a referendum which would allow the City to acquire an electric utility system.  However, early in 1992, EPEC had instituted bankruptcy proceedings.  In 1994, following the referendum, the bankruptcy court lifted the existing stay, and the City proceeded against EPEC by filing an action arguing that the City had the right to exercise eminent domain and condemn EPEC's utility within the City. EPEC removed the action to federal court.  EPEC moved for summary judgment, for consolidation of both actions then pending in federal court, and for certification of an issue of first impression to this Court for resolution.  The City moved for abstention or remand to the state district court in which the City initially filled an action seeking declaratory judgment.  In July of 1995, the parties consented to the jurisdiction of United States Magistrate Judge Leslie C. Smith for all proceedings, including final disposition of the case filed by EPEC and also the case filed by the City. *See* D.N.M.LR–Civ. 73.

{4}  Judge Smith ruled on several aspects of the case.  *See generally City of Las Cruces v. El Paso Elec. Co.*, 904 F.Supp. 1238 (D.N.M.1995) (denying EPEC's motion to consolidate, granting in part EPEC's motion to dismiss, and denying both EPEC's motion for summary judgment and the City's motion for abstention.)  Subsequently, following an evidentiary hearing, he entered an order granting EPEC's motion requesting certification to this Court.

{5} We accepted certification from the federal court by order in August of 1996. In early 1997, after this Court heard oral argument on the certified question, the New Mexico Legislature amended several sections of the relevant statute. 1997 N.M. Laws,. ch. 228. We ordered supplemental briefing on the question of whether or not the Legislature's actions made the certified question moot. Both parties filed briefs, and the Public Service Company of New Mexico filed an amicus curiae brief, arguing that the Legislature's actions do not moot the issue raised here. We answer here only the issue of whether or not the Legislature's actions made the certified question moot.

## II.

{6} In order to explain why the issue certified is moot, we first describe the arguments made to Judge Smith for the respective forms of relief requested by EPEC and the City, and the decisions he made as the trial judge. EPEC argued that it was entitled to summary judgment on the City's action for declaratory judgment. EPEC also argued that the City lacked any power to condemn that portion of the utility's electric distribution system within the City's limits; the argument relied on that principle of eminent domain law known as the prior public use doctrine. Under the prior public use doctrine, a municipality has no power to condemn property already dedicated to a public use, absent power conferred by the Legislature expressly or by necessary implication. *See City of Albuquerque v. Garcia,* 17 N.M. 445, 130 P. 118 (1913). However, the doctrine only applies if the property would be destroyed by the use to which the municipality proposed to condemn the property. *See City of Raton v. Raton Ice Co.,* 26 N.M. 300, 191 P. 516 (1920).

{7} The City made two responses. First, the City argued that three New Mexico statutes either individually or collectively authorized the condemnation it proposed. The three statutes were NMSA 1978, § 3–24–1(A) (1993, prior to 1997 amendment), NMSA 1978, § 3–24–5 (1981), and NMSA 1978,

§ 42A–3–1(A)(7) (1981, prior to 1997 amendment). Judge Smith noted that the New Mexico Legislature's grants of condemnation authority to municipalities historically have been written in "plain and unequivocal language." *City of Las Cruces,* 904 F.Supp. at 1250. He then concluded that the statutes on which the City relied, whether read individually or construed together, failed to provide the authority necessary for the City to condemn EPEC's utility system. *Id.* at 1251.

{8} Second, the City relied on the state constitutional provisions for home rule, see N.M. Const. art. X, § 6, arguing that home rule authority was sufficient to allow municipal condemnation of public use property. Judge Smith concluded that the New Mexico State Constitution granted general powers and did not contain the necessary express or implied authority required by the prior public use doctrine. Judge Smith reasoned in his written opinion that "if, as the City contends, home rule authority is sufficient to allow municipal condemnation of public use property, then specific condemnation statutes would not be necessary." *City of Las Cruces,* 904 F.Supp. at 1251.[1]

{9} Having rejected the City's responses that existing New Mexico statutes and the Constitution provided the City express or implied authority to condemn EPEC's property, Judge Smith considered the possibility that more general authority would suffice, on the basis that the use the City contemplated was actually not a destruction of the prior public use. Judge Smith noted that "joint or co-use of an electric utility system does not equal destruction, obliteration or material impairment of an existing public use," and that this "exception to the public use doctrine has been called 'compatible use'". *See City of Las Cruces,* 904 F.Supp. at 1252. He suggested that there must be a factual determination whether the proposed use destroyed, obliterated, or materially impaired the existing use before a ruling could be made on the applicability of either the general prior public use doctrine or the exception for compatible use. *Id.* at 1256. From June 27 to July 3, 1996, he conducted a bench trial in order to

---

1. We note that the issue of home rule authority is properly before us in *El Paso Electric Co. v. City of Las Cruces,* No. 24,622, currently pending before this Court.

make a factual determination on "destruction, obliteration or material impairment of the existing public use." Following that hearing, he issued a written order, which included the request for certification. The request contains a written decision concluding that "the City failed to meet its burden of showing that there would be no material impairment," withholding judgment on the "ultimate question of whether the City had the authority to condemn EPEC's property," incorporating stipulated facts, and setting out his own findings.

### III.

{10}   We next construe the certified question. For two reasons, we do not construe the certified question as requiring a determination whether or not the City had express or implied authority to condemn EPEC's property under the New Mexico statutes as they read at the time he ruled or under the New Mexico Constitution.

{11}   First, we do not understand Judge Smith's order following the evidentiary hearing to request that determination. Judge Smith deliberately determined, before granting EPEC's motion to certify, that the City had failed to prove there would be no material impairment. Following an evidentiary hearing to determine whether there was a basis for avoiding application of the prior public use doctrine, he concluded that the City had the burden of proof on the issue, that the issue was whether the City's "proposed condemnation would not materially impair the public use of EPEC's property sought to be condemned, [and] that the City failed to meet its burden of showing there would be no material impairment." He characterized the City's plan as "conclusory, amorphous, ethereal and subject to future modifications." Further, having determined that the City's evidence failed to show no material impairment, Judge Smith did not proceed to determine, following the evidentiary hearing, either that the prior public use doctrine applied or that the compatible use exception did not. Rather, he meticulously detailed why he found the City's showing insufficient.

{12}   Because Judge Smith proceeded to an evidentiary hearing before granting EPEC's request for certification and because his subsequent order focuses on the question of material impairment, we believe he did not intend to certify the broad question of whether existing New Mexico statutes or the New Mexico Constitution provided the express or implied authority the City needed under the prior public use doctrine. The written opinion and order in *City of Las Cruces,* 904 F.Supp. at 1243–57 answers the questions arising from the parties' arguments on statutory and constitutional authority. The written opinion and order, however, does not answer the questions arising from the parties' arguments on the compatible use exception. We conclude Judge Smith certified the question of whether the City's showing justified application of the compatible use exception, permitting condemnation, or required application of the prior public use doctrine, precluding condemnation.

{13}   Second, we believe that our interpretation of the certified question is bolstered by the nature of our role in matters certified by the federal courts. If we were to construe the certified question to require a broader determination, we would be conducting an appellate review of the written opinion and order in *City of Las Cruces,* 904 F.Supp. at 1243–1257. That is not our prerogative. That would be the prerogative of the Tenth Circuit Court of Appeals. *See Cray v. Deloitte Haskins & Sells,* 925 P.2d 60, 62 (Okla. 1996). We thus construe the certified question narrowly. We next address the question of whether the amendments enacted by the Legislature in 1997 have made moot the narrow certified question we have identified.

### IV.

{14}   The New Mexico Legislature acted in the 1997 session to provide express authority to the City. The Legislature amended several sections of the relevant statutes. First, the Legislature amended NMSA 1978, § 3–23–3(C) (as amended 1997), allowing a municipality to acquire a utility by referendum, without approval of the New Mexico Public Utility Commission (PUC). Section 3–24–1 was amended to include three new

subsections. See § 3–24–1(E)–(G). Under Section 3–24–1(E), the legislation gives municipalities with more than sixty thousand citizens, but less than one hundred thousand, the right to "acquire, maintain, contract for and condemn for use as a municipal utility privately owned electric facilities." Section 42A–3–1 was also amended to include Subsection (A)(8), which amends the eminent domain code to give municipalities the power to condemn electric utility plants, properties and facilities. NMSA 1978, § 42A–3–1(A)(8). Finally, the Legislature declared an emergency and made the amendments effective immediately. 1997 NM Laws, ch. 228, § 4. The Governor signed the legislation on April 11, 1997. 1997 NM Laws, ch. 228.

■ {15} The Legislature now has given the City specific authority to condemn EPEC's property in order to operate its own electric utility. The Legislature acted before we answered the certified question. We conclude the Legislature's actions made this cause moot.[2]

■ {16} A case will be dismissed for mootness if no actual controversy exists. *Howell v. Heim*, 118 N.M. 500, 503, 882 P.2d 541, 544 (1994).

> The prerequisites of "actual controversy" warranting consideration in a declaratory judgment action are: a controversy involving rights or other legal relations of the parties seeking declaratory relief; a claim of right or other legal interest asserted against one who has an interest in contesting the claim; interests of the parties must be real and adverse; and the issue involved must be ripe for judicial determination.

*Sanchez v. City of Santa Fe*, 82 N.M. 322, 324, 481 P.2d 401, 403 (1971). If no actual controversy exists, a case may not be heard unless the issue is of substantial public interest and is likely to reappear before the court. In such a situation, an exception may be

made by a court and the question decided. *Howell*, 118 N.M. at 503, 882 P.2d at 544.

{17} The narrow certified question we have identified concerns the applicability of the prior public use doctrine to specific facts, under a statutory scheme that no longer exists. The Legislature has enacted statutes that by their terms provide the express authority the prior public use doctrine generally requires. The Legislature's action means the certified question need not be answered. Under these circumstances, we need not explore the proper present scope of the compatible use exception.

## V.

■ {18} We also do not reach any issues not certified; and therefore, we do not comment upon the constitutionality of the statutory amendments. "As a general rule, an action will be dismissed if the issues therein are or have become moot." *Mowrer v. Rusk*, 95 N.M. 48, 51, 618 P.2d 886, 889 (1980). We will make an exception to this general rule if the issue is likely to reappear before this Court or an issue of substantial public interest is presented. *Id.* We hold that no actual controversy continues to exist, and we do not see that the issue confronting Judge Smith is likely to recur. We have held that we will only accept certified questions when our answer is determinative and "either disposes of the entire case or controversy, or disposes of a pivotal issue that defines the future course of the case." *Schlieter v. Carlos*, 108 N.M. 507, 508–09, 775 P.2d 709, 710–11 (1989) (citations omitted). We avoid rendering advisory opinions. *Id.* at 508, 775 P.2d at 710.

{19} In *Schlieter*, we refused to accept certification from the federal court for several reasons. First, the federal court failed to develop the record fully, thereby presenting this Court with inadequate facts, and there-

---

**2.** In *A.K.H. v. R.C.T.*, 312 Or. 497, 822 P.2d 135, 136–37 (1991) (en banc), the Supreme Court of Oregon similarly addressed a statutory amendment occurring after certification from a federal court and prior to disposition. The Oregon court, rather than relying on principles of mootness, treated the statute as providing an answer to the certified question. Specifically, in the

context of a question regarding the retroactivity of a particular statute, the amendment expressly announced retroactive application. Unlike the amendment in *A.K.H.*, Section 3–24–1(E) does not answer the question certified; Section 3–24–1(E) does not clarify the compatible use exception. Rather, Section 3–24–1(E) obviates the need for the question, thereby rendering it moot.

fore, we could not adequately answer the constitutional questions presented by the federal court. Additionally, answering the certifications would not have determined the disposition of the case. *Id.* at 508–10, 775 P.2d at 710–12.

{20} EPEC argues in its supplemental briefing to this Court that the Legislature's action does not answer the certified question, nor does it dispose of the controversy between the parties. EPEC argues that a question remains as to the constitutionality of the Legislature's actions. Specifically, EPEC claims that Section 3–24–1(E) (1997), circumscribed so as to apply only to the City of Las Cruces, violates the prohibition against special legislation contained in the New Mexico Constitution, N.M. Const. art. IV, § 24. For the following reasons, we leave the resolution of this issue to the certifying court.

{21} We begin by noting that "[i]t is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so." *Schlieter,* 108 N.M. at 510, 775 P.2d at 712. In addition, we "will presume the constitutionality of a statute." *Garcia ex rel. Garcia v. La Farge,* 119 N.M. 532, 539, 893 P.2d 428, 435 (1995). With this background, we analyze our role in answering questions certified by the federal courts.

{22} Our authority to review the question certified by Judge Smith is limited to matters for which "there are no controlling precedents" in decisions of the New Mexico Supreme Court or the New Mexico Court of Appeals. NMSA 1978, § 34–2–8 (1993, repealed 1997); *accord* NMSA 1978, § 39–7–4 (effective July 1, 1997). This requirement is consistent with the overall purposes of certification. The process of certification developed relatively recently and out of federal courts' strong preference, based on federalism grounds, for abstention from resolving certain undecided matters of state law. *See generally Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941) (describing prior cases as reflecting "a doctrine of abstention appropriate to our federal system whereby the federal courts, 'exercising a wise discretion,' restrain

their authority") (quoting *Cavanaugh v. Looney,* 248 U.S. 453, 457, 39 S.Ct. 142, 143, 63 L.Ed. 354 (1918)); Charles Alan Wright, et al., *Federal Practice and Procedure* §§ 4241–48 (1988) [hereinafter *Federal Practice* ] (describing various abstention doctrines and related development of certification procedures). Rather than relying on the inefficient process of declaratory relief in state courts to resolve state law ambiguities, states adopted various methods of allowing federal courts to certify to state courts unsettled matters of state law. *See Lehman Bros. v. Schein,* 416 U.S. 386, 390–92, 94 S.Ct. 1741, 1744, 40 L.Ed.2d 215 (1974) (remanding for consideration of option of certification and indicating that, while certification is not "obligatory," it "helps build a cooperative judicial federalism" and promotes judicial economy); *see also Federal Practice* § 4248 (discussing development of certification procedures).

{23} In certifying the matter to this Court, Judge Smith determined that there was an ambiguity in the law of this State concerning the applicability of the compatible use exception. Our conclusion that this question is now moot reflects the fact that the .answer is no longer dependent on *unsettled* matters of state law. In fact, the question need not be asked because the compatible use exception is extraneous to the resolution of the matter in light of express legislative authority.

{24} We conclude that there is adequate precedent in decisions of this Court to allow a determination of the constitutionality of Section 3–24–1(E) under Article IV, Section 24. See *Garcia,* 119 N.M. at 539, 893 P.2d at 435 (addressing whether "the legislature has acted arbitrarily" and placing "the burden of producing evidence demonstrating the absence of a rational basis for the legislative decision" on the party challenging constitutionality under Article IV, Section 24); *Thompson v. McKinley County,* 112 N.M. 425, 427–29, 816 P.2d 494, 496–98 (1991) (evaluating the constitutionality of special legislation). The question is whether the Legislature "rationally could have determined" that particular facts made a general law inappropriate. *Thompson,* 112 N.M. at

429, 816 P.2d at 498. Because the answer to the question certified no longer relies on unsettled matters of New Mexico law and because the parties have not challenged the constitutionality of Section 3–24–1 in the certifying court, any decision of this issue would be advisory. *Cf. Jones ex rel. Jones v. Harris,* 460 So.2d 120, 122 (Miss.1984) (refusing to address the constitutionality of a statute when "that question has not been squarely presented to and litigated by a court of competent jurisdiction"); *Western Helicopter Servs., Inc. v. Rogerson Aircraft Corp.,* 311 Or. 361, 811 P.2d 627, 631 (1991) ("If we determine that there is [controlling precedent for the question certified], that factor will argue heavily against accepting certification."). Further, the certifying court is in the best position to resolve, in the first instance, the facts necessary for a determination of the constitutionality of Section 3–24–1. *See Thompson,* 112 N.M. at 428, 816 P.2d at 497 ("Each law must be evaluated on its own special circumstances."). Our goal in answering a question certified by the federal courts is not to finally dispose of all relevant issues in a case. *Compare* § 34–2–8, *with Collins ex rel. Collins v. Tabet,* 111 N.M. 391, 404 n. 10, 806 P.2d 40, 53 n. 10 (1991) (construing statute allowing for certification from the New Mexico Court of Appeals as establishing jurisdiction over "the entire case in which the appeal is taken"). Therefore, we presume the constitutionality of this statute and leave the resolution of this issue, should it arise, to the certifying court.

## VI.

{25} The City has long sought to operate its own utility. EPEC has argued that the City could not condemn the company's private property without specific legislative authority. The federal court certified a narrow issue to this Court, which would have resolved the controversy then pending; that issue required a determination of whether an exception to the prior public use doctrine applied. However, the New Mexico Legislature has acted to grant the City specific authority to proceed to condemn EPEC's property. The Legislature's action makes it unnecessary to determine the applicability of the compatible use exception to the prior

public use doctrine. Therefore, we need not answer the certified question. We hold that no actual controversy now exists. We therefore deny EPEC's motion to permit further briefing, quash our order accepting certification, and now decline to accept certification.

{26}  **IT IS SO ORDERED.**

FRACHINI, C.J., BACA and SERNA, JJ., and PICKARD, J., Court of Appeals, sitting by designation, concur.

