WALDEN, Chief Judge.
This is an eminent domain proceeding wherein the City of Palm Bay sought to acquire Defendant-General Development Utilities, Inc.’s (hereinafter referred 'to as defendant) water and sewer system, all of which was located within the city’s corporate boundaries. The City of Palm Bay is a governmental unit, a municipal corporation organized under the laws of the State of Florida. The defendant is a private corporation organized for profit.
The city filed its petition and summons to show cause against the defendant seeking to acquire defendant’s entire system. Defendant filed a motion to dismiss and to quash both the petition and the summons to show cause. At a hearing on defendant’s motion the court ordered that the petition be amended to allege the authority granting petitioner the power of eminent domain. Petitioner declined to amend its petition, and the trial court entered the order appealed which dismissed the petition with prejudice.
The sole issue presented on appeal is whether the City of Palm Bay has the power to condemn an existing privately owned water and sewer system under its charter and under the statutes of the State of Florida. Stated another way, has the sovereign State of Florida delegated such power to the city, a municipal governmental unit? Not presented for appellate treatment and fhus left for later trial court consideration are the necessity for the taking, the rights of the defendant, if any, under its franchise agreement, and the measures to be used in determining just compensation.
The Charter of the City of Palm Bay is found in Chapter 61-2629, Laws of Florida, Special Acts (1961), as amended.
Section 14 of the charter provides that the city shall have the powers, functions and immunities granted to municipal corporations by the Constitution and General Laws of the State of Florida, together with all the implied powers necessary to carry into execution all of the powers granted.
Section 23 of the charter provides that all general laws of the state applicable to municipal corporations, which are not in conflict with the provisions of the charter, shall be applicable to the city. It is, therefore, clear that the petitioner by its charter possesses all the powers and authority vested in a municipal corporation by the Florida Statutes.
Florida Statutes § 180.06 F.S.A., provides :
“Activities authorized by municipalities and private companies Any municipality or private company organized for the purposes contained in this chapter, is authorized * * * (3) to provide a water *914 supply for domestic, municipal or industrial uses; (4) to provide for the collection and disposal of sewage and other liquid wastes * * * (6) and incidental to such purposes and to enable the accomplishment of the same, to construct * * * sewerage systems, trunk sewers, intercepting sewers, pumping stations, wells, siphons, intakes, pipe lines, distribution systems, purification works, collection systems, treatment and disposal works; * * * (9) and to construct such other buildings and facilities as may be required to properly and economically operate and maintain said works necessary for the fulfillment of the purposes of this chapter * * (Emphasis added.)
Florida Statutes § 180.22, F.S.A., provides :
“Power of eminent domain Any municipality or private company or corporation authorized to carry into effect any or all of the purposes defined in this chapter, may exercise the power of eminent domain over railroads, traction and street car lines, telephone and telegraph lines, all public and private streets and highways, drainage districts, bridge districts, school districts, and any other public or private lands or property whatsoever necessary to enable the accomplishment of the purposes of this chapter(Emphasis added.)
It appears that two of the “purposes defined in this chapter” referred to in § 180.22 are, by virtue of § 180.06 (3 and 4), “to provide a water supply” and “to provide for the collection and disposal of sewage.” Therefore, the City of Palm Bay, in common with the other municipalities of the state, has a general grant of the power of eminent domain for the purposes of water and sewage.
Appellee urges that statutes delegating the power of eminent domain are subject to strict construction. And this is admittedly so.
“ * * * However, while the principle of strict construction has been held applicable where a statute confers the power on a public officer, body, or agency or on a political subdivision of the state, usually the principle is not applied as strictly to public bodies or officers as it is in construing powers given to private corporations. * * * ”
Further,
“The doctrine of strict construction does not preclude the giving of a reasonable and sound interpretation to a statute conferring the power of eminent domain, so as to effectuate the intention of the legislature. Such a statute should be construed in the light of the purposes or objectives sought to be attained by its enactment, and a construction which would thwart or defeat such purposes or objectives should be avoided. Accordingly, a statute conferring the power of eminent domain should not be construed so strictly, narrowly, or technically as to defeat or ignore its evident purpose * * *.”[2]
Appellee argues that F.S.A. § 180.22 was not intended to allow taking of an existing utility in its entirety but to allow merely the taking of land upon which to build a public utility system and for the taking of any right of way needed. To construe § 180.22 as allowing the taking of an existing public utility, he contends, would necessarily mean a municipality could take by eminent domain a complete railroad, street car line, telephone and telegraph system, etc., and “[o]bviously this was not the intent of the Legislature.”
This argument ignores the distinction that such utilities ordinarily extend over a much greater area than that of a single municipality and so would not be subject to eminent domain in their en *915 tirety in any event. But, if one of the enumerated utilities did not extend beyond the confines of the municipality — for example, a city street car line — the taking of it in its entirety would not at all be unreasonable. So it is not so “obviously” beyond the intent of the legislature.
Additionally, to apply the construction of § 180.22 which appellee urges would be unduly restrictive and wholly unresponsive to the words “or property whatsoever.”
Appellee would argue that F.S.A. § 180.16 provides the only legislative authorization for a municipality to condemn an existing water and sewer supply. That section reads:
“Acquisition by municipality of property of private company. When a municipality has granted to a private company or corporation a privilege or franchise * * * if at the expiration of the term of the privilege or franchise and after petition of the private company or corporation, the municipality fails or refuses to renew the privilege or franchise, then * * * its property * * * shall be purchased by the said municipality at a price to be mutually agreed upon; provided, however, if the price for the same cannot be agreed upon, the price shall be determined by an arbitration board * * * and provided further, that in the event said board cannot agree as to the price to be paid by the said municipality, then the municipality shall file appropriate condemnation proceedings * *
A proper construction of this section would indicate that the legislature intended to provide for the unique contingency of a failure to renew a franchise. Such a contingency is unique because the property of the utility, though admittedly valuable, becomes worthless when severed from its franchise. Mere pipes in the ground are worthless without the right to deliver water through them. Thus, in an effort to be as fair as possible to the private utility, the legislature has, by § 180.16, required the municipality to purchase the company’s property, with priority going to the method of purchase calculated to give the company the best price. But nowhere in this section is it provided that the occasion of an expired franchise is[1] the only occasion upon which a municipality may exercise the right of condemnation over an existing private utility. Certaintly a statute such as § 180.16 which requires municipalities to purchase existing public utilities under certain specific circumstances is not inconsistent with the permissive exercise by municipalities of the power of eminent domain under other, less specific, circumstances.
Appellee’s remaining major argument is that the doctrine of prior public use prohibits the taking of an existing privately owned public utility already dedicated to a public use without clear and specific statutory authority. The general rule is stated:
“If * * * a condemnor to whom the power of eminent domain has been delegated, such as a municipality or a private corporation, seeks to exercise the power with respect to property already devoted to a public use, the general rule is that where the proposed use will either destroy such existing use or interfere with it to such an extent as is tantamount to destruction, the exercise of the power will be denied unless the legislature has authorized the acquisition either expressly or by necessary implication.” [3]
However, the same authority goes on to say:
“If, however, the purpose of such acquisition is to transfer the ownership and operation of such property from a public service corporation (which although a quasi-public entity, is never *916 theless a private corporation organized for profit) to a municipality or other purely public corporation, it has been held that the greater public use and increased public benefit which result from governmental operation justify such acquisition * * [4]
The problem is more than the mere taking of property already devoted to a public use and devoting it to a different public use. Rather, the property is to be devoted to the same public use. This is normally prohibited. However:
“The general rule permitting condemnation of property already devoted to a public use is subject to the limitation that such property cannot ordinarily be taken to be used for the same purpose in the same manner, since this would amount simply to the taking of property from one and giving it to another without any benefit or advantage whatever to the public; but the larger public use and more general public benefit resulting from the operation of a public utility by a municipality or public corporation will warrant authorization to such municipality or public corporation to take property of a private corporation and devote it to a like purpose. * * *” [5]
Defendant seeks to arrogate unto itself immunities and .privilege based upon a distinction not apparent to this court. It agrees that under existing law the city could condemn the several ingredients of a water and sewer system and put them together but denies that the city can condemn an existing or operating system absent a special act of the legislature specifically authorizing such acquisition with name and definition. We simply disagree.
It would be indeed a strange circumstance if a private business could perform what is normally considered to be a proprietary municipal function for its profit without being amenable to eminent domain proceedings, except upon the terms asserted by defendant. Surely as a policy consideration the petitioner’s citizenry, operating through their selected representatives have a right to expect their governmental unit to provide them with services within its proper sphere. Their public will should not be thwarted by the defendant merely because it got there first, or because it thinks that it possesses some preference whereby a special law or delegation must be enacted according to its will, while for all other people and classes of property a general delegation of power is sufficient. We feel that, had the legislature intended for private operators of water and sewer systems to possess such privilege, it would have so provided. It has not done so.
It is to be remembered and emphasized throughout this assessment, that while petitioner has the power to condemn, it cannot exercise this power to completion unless and until the necessity for the taking is established and the defendant is fully recompensed by payment of just compensation, all according to law.
*917 In light of the foregoing we say that a municipality may, under general statutory authority, take by eminent domain the property of a private corporation already devoted to a public use and devote it to a like purpose.
Reversed.
ANDREWS, J., and GONZALEZ, JOSE A., Jr., Associate Judge, concur.

. 29A C.J.S. Eminent Domain § 22.

. Ibid.

. 1 Nichols, Eminent Domain, § 2.2.

. 1 Nichols, Eminent Domain, § 2.39 [9]. See also, Fifth Avenue Coach Lines, Inc. v. City of New York, 1962, 11 N.Y.2d 342, 229 N.Y.S.2d 400, 183 N.E.2d 684. “ * * * [I]t is equally clear that the taking over by government of the property of a public service corporation for the purpose of providing the same service under governmental, as opposed to private, auspices is a public use * *

. 29A C.J.S. Eminent Domain § 75. The general rule referred to is that: “ * * * in the absence of constitutional prohibition, property previously devoted to one public use may be taken under the power of eminent domain for another and different public use, although * * * such property cannot ordinarily be taken in the particular case unless the statute under which the power of eminent domain is being exercised so provides expressly or by necessary implication. * * *»